IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 04-24 |
| | ) | |
| KAMAU A. BAILEY | ) | Civil No. 08-787 |

## O P I N I O N

DIAMOND, D.J.

Presently before the court is petitioner Kamau A. Bailey's ("petitioner") pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 (Document No. 75) and his amendment thereto (Document No. 79). For the reasons set forth below, petitioner's §2255 motion will be denied.

On August 30, 2004, a grand jury returned a second superseding indictment against petitioner charging him with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§922(g)(1) and 924(e). Petitioner was convicted by a jury on June 22, 2005, on both counts.

On September 12, 2005, the Honorable Thomas M. Hardiman sentenced petitioner to 235 months imprisonment at each count, to be served concurrently, followed by a five-year term of supervised release.[1]

Petitioner filed a timely appeal to the United States Court

---

[1]This case originally was assigned to Judge Hardiman. It was re-assigned to this member of the court when petitioner filed his §2255 motion because Judge Hardiman had been appointed to the United States Court of Appeals for the Third Circuit prior to that time.

of Appeals for the Third Circuit and raised the following issues: (1) whether the district court erred in denying his pretrial motions to suppress evidence resulting from allegedly illegal searches on May 19, 2001 and January 1, 2003; (2) whether his arrest on January 1, 2003 was without probable cause; (3) whether his motion for severance of the two counts should have been granted; and (4) whether the statute he was charged under is unconstitutional. The district court's judgment of conviction and sentence was affirmed on March 20, 2007, and a mandate was issued on May 24, 2007.

Petitioner subsequently filed the instant §2255 motion seeking relief on 34 grounds. Petitioner also filed a motion to amend his §2255 motion repeating a ground for relief that he already had raised in his original motion. Specifically, petitioner has raised the following grounds for relief:

(1) Assistant Federal Public Defender Thomas Livingston, who was petitioner's trial counsel, violated his Sixth Amendment right to counsel under the United States Constitution by failing to do the following:

- challenge the traffic stop and lawful custody of the vehicle;

- challenge the investigatory stop and perform research to support arguments for the suppression hearing;

- send petitioner missing pages of the indictment;

- obtain preliminary hearing transcripts to prepare for the suppression hearing and trial;

- discuss an adequate strategy for the suppression hearing and trial;

AO 72
(Rev. 8/82)

- investigate and research petitioner restoring his civil rights and file a motion to dismiss the indictment alleging petitioner was actually innocent;

- submit an adequate "interstate commerce motion";

- obtain police disciplinary files and arrest report records;

- obtain petitioner's consent before making a critical decision regarding a motion to sever;

- advise petitioner regarding government witnesses;

- object to the absence of African-Americans in the jury pool;

- investigate, develop, subpoena and present any factual material for a defense at trial;

- cross-examine government witnesses concerning a towing notice;

- cross-examine government witnesses regarding the substantial effect the firearm had on interstate commerce;

- cross-examine government witnesses concerning examination of the firearm for fingerprints;

- object to hearsay testimony by government witnesses;

- raise Federal Rule of Evidence 403;

- object to the admission of evidence of petitioner's bad acts under Rule 404(b);

- object to the admission of certain government evidence;

- sequester a police officer during trial;

- request the court to instruct the jury concerning impeachment testimony;

- challenge petitioner's classification as an armed career criminal and resulting sentencing enhancement, an argument petitioner repeated in his motion to amend his §2255 motion;

- file and provide petitioner with a discovery motion;

- file a motion for judgment of acquittal as to Count Two; and

(2) Assistant Federal Public Defender Karen Gerlach, who was petitioner's appellate counsel, violated his Sixth Amendment right to counsel under the United States Constitution by failing to do the following:

- properly advise petitioner concerning the number of issues that may be raised on appeal;

- challenge lawful custody of the vehicle under plain error review;

- challenge the investigatory stop under plain error review;

- raise "insufficient evidence" to support the verdict for Count Two;

- raise any sentencing issue in the appellate brief;

- raise the "Brady Law" in the appellate brief;

- submit a reply brief to the appellate court; and

(3) The government violated petitioner's Fifth Amendment right to due process by failing to provide with the Rule 16 materials photographs allegedly taken by an officer who was involved with this case; and

(4) The court violated petitioner's Fourteenth Amendment right to due process by doing the following:

- accepting the government's response brief when it was overdue and making a ruling on a government exhibit that was improperly submitted; and

- failing to instruct the jury regarding impeached testimony.

Upon due consideration of petitioner's motion, the

government's response thereto (Document No. 83) and petitioner's reply brief (Document No. 87), the court finds that petitioner is not entitled to relief under §2255.[2]

I. Standard of Review

A federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). In general, §2255 is a vehicle to cure only jurisdictional errors, constitutional violations, proceedings that resulted in a "complete miscarriage of justice" or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783 (1979).

---

[2]Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Thus, if the record conclusively negates the factual predicates asserted in support of a §2255 motion, and if the petitioner would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, the court does not abuse its discretion by electing not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075. In this case, the court finds no need for an evidentiary hearing as the record affirmatively establishes that petitioner's claims for relief lack merit.

AO 72
(Rev. 8/82)

## II. Factual Background

Count One of the superseding indictment relates to events that occurred on May 19, 2001. Early that day, Pittsburgh Police Lieutenant Kevin Kraus was on patrol in a marked police car when he observed a vehicle with a burned out headlight turn right and drift into his lane. As a result, Lieutenant Kraus had to swerve to avoid a head on collision with the vehicle. The occupant of the vehicle, later identified as petitioner, continued past Kraus' vehicle without slowing or stopping.

After Lieutenant Kraus chased petitioner's vehicle for several blocks, petitioner stopped in the middle of the street, exited the driver's side of the vehicle and ran away. Kraus chased petitioner on foot until he leaped over a wall. At that point, Kraus radioed for assistance and watched petitioner continue to flee. Other officers subsequently apprehended petitioner.

Lieutenant Kraus returned to petitioner's vehicle, which still was running, and removed the key and locked the door. While other officers remained with petitioner's vehicle, Kraus went to the location where petitioner was apprehended and identified him as the individual who had fled.

The officers called a tow truck to tow petitioner's vehicle. Prior to the tow, the officers conducted an inventory search pursuant to their police policy and found a loaded .45 caliber pistol in the trunk, along with a number of bags of crack cocaine. After having been advised of his _Miranda_ rights, petitioner told

AO 72
(Rev. 8/82)

Lieutenant Kraus that he received the firearm from another individual earlier that evening, and that the crack was for his personal use.

Count Two of the superseding indictment relates to events that occurred on January 1, 2003. On that date, Pittsburgh Police Officer Robert Kavals and two other officers who were on patrol observed petitioner and another individual standing on the porch of a boarded-up row house in a high crime area of Pittsburgh. After identifying himself as a police officer, Kavals asked to speak to petitioner and the other individual. Petitioner and the other individual walked away from the officers, and Kavals saw petitioner throw a shiny object into the grass. Petitioner then stopped, turned around and agreed to speak to Kavals.

Petitioner told Kavals that he had come to the area to buy crack, but he was not in possession of any because he had smoked it all. As Kavals conversed with petitioner, he walked to the area where petitioner had thrown the shiny object. Kavals was able to see that the object petitioner had discarded was a .22 caliber semi-automatic pistol. Another officer subsequently recovered the firearm.

Kavals asked petitioner if he had a permit to carry a gun, to which he responded, "what gun? I don't have a gun." Petitioner backed away from Kavals and attempted to flee. Following a struggle, petitioner was subdued, handcuffed and placed under arrest. Petitioner was searched and the officers recovered a .22 caliber bullet from his right front pants pocket that fit the

AO 72
(Rev. 8/82)

pistol petitioner had thrown into the grass.

Petitioner previously had been charged and convicted in state court of offenses that constituted felonies punishable by imprisonment in excess of one year. As a result, petitioner was prohibited from possessing the guns that were recovered by the police in May 2001 and January 2003.

## III. Discussion

### A. Dismissal of Claims Previously Litigated

A §2255 motion generally may not be employed to re-litigate issues that were raised and considered on direct appeal absent exceptional circumstances, such as an intervening change in the law. See United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993); Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999); see also Withrow v. Williams, 507 U.S. 680, 720 (1993) (Scalia, J., concurring) ("Prior opportunity to litigate an issue should be an important equitable consideration in any habeas case, and should ordinarily preclude the court from reaching the merits of a claim, unless it goes to the fairness of the trial process or to the accuracy of the ultimate result.").

Despite this prohibition, petitioner here attempts to re-litigate under the guise of ineffective assistance of counsel a number of issues that he previously litigated before the district court and raised on direct appeal to the Third Circuit Court of Appeals. These issues include petitioner's assertion that trial counsel failed to do the following: challenge the traffic stop and

lawful custody of the vehicle; challenge the investigatory stop; cross-examine a government witness concerning a towing notice;[3] and cross-examine a government witness regarding the substantial effect the firearm had on interstate commerce. [4]  In addition, petitioner's claims that appellate counsel failed to challenge the investigatory stop and failed to challenge lawful custody of the vehicle[5] fall within the category of issues previously raised on direct appeal.

This court will not abide petitioner's attempt to recast these arguments as ineffective assistance of counsel claims, so that he may re-litigate matters that previously were decided against him by the district court and by the Third Circuit Court of Appeals.  Accordingly, the court declines to address any such issues in the context of this §2255 proceeding.

B.  Procedural Bar

Petitioner's claims that the court denied his right to due process under the Fourteenth Amendment and that the government denied his right to due process under the Fifth Amendment could

---

[3]By this argument, petitioner is challenging the inventory search of the vehicle before it was towed.  The district court determined the inventory search was not unconstitutional and that decision was affirmed on appeal.

[4]This argument is an attempt by petitioner to challenge the constitutionality of the statute under which he was charged, an issue which he raised on appeal.

[5]With respect to petitioner's "lawful custody of the vehicle argument," the court notes that the Third Circuit found the police had lawful custody of petitioner's vehicle because he had abandoned it in the middle of the street.

have been raised on direct review but were not. Therefore, those claims are procedurally barred. See Bousley v. United States, 523 U.S. 614, 621 (1998).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley, 523 U.S. at 622 (citations omitted).

Cause for the procedural default must be an occurrence beyond a petitioner's control that cannot be attributed to him. See McCleskey v. Zant, 499 U.S. 467, 493 (1991). Additionally, prejudice must be substantial, such that the integrity of the entire trial was infected. See United States v. Frady, 456 U.S. 152, 170 (1982).

"'[A]ctual innocence'" means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995). Here, petitioner's only claim that he was actually innocent concerns his argument regarding the restoration of his civil rights. However, this claim is without merit, as will be discussed below.

The only ground for cause for procedural default asserted by petitioner is ineffective assistance of both his trial counsel and appellate counsel, a claim that properly is raised for the first

time in a §2255 motion.  <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).  We next address petitioner's ineffective assistance of counsel claims and find that they are without merit.

C.    <u>Ineffective Assistance of Counsel</u>

A two-part test is utilized to assess an ineffective assistance of counsel claim.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The first prong requires the petitioner to demonstrate that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id</u>. at 687.  The deficiency prong requires proof that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms.  <u>Id</u>. at 688.  The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential.    <u>Id</u>. at 689.    The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made by an attorney unless they are unreasonable.    <u>Id</u>. at 690.  In sum, petitioner has the burden of overcoming the strong presumption that counsel was effective.  <u>Id</u>. at 689.

If deficient performance is established, the second prong of the <u>Strickland</u> analysis requires a showing that counsel's deficient performance prejudiced the defense.    "This requires showing that counsel's errors were so serious as to deprive the

AO 72
(Rev. 8/82)

defendant of a fair trial, a trial whose result is reliable."
*Strickland*, 466 U.S. at 687. To satisfy this test, a petitioner
must demonstrate that but for counsel's unprofessional errors,
there is a reasonable probability that the result of the
proceeding would have been different. *Id.* at 694. The assessment
cannot be based upon generalities but instead must be based upon
a demonstration of how the "specific errors of counsel undermined
the reliability of the [finding] of guilt." *Flamer v. State of
Delaware*, 68 F.3d 710, 729 (3d Cir. 1995) (*quoting* *United States
v. Cronic*, 466 U.S. 648, 659 n.26 (1984)).

Petitioner contends that both his trial counsel and his
appellate counsel were ineffective for the laundry list of reasons
set forth at the outset of this opinion. However, petitioner has
not satisfied the first prong of the *Strickland* test because he
has not demonstrated that either trial counsel's or appellate
counsel's performance was deficient.

As an initial matter, an appellate lawyer is not ineffective
for failing to raise every nonfrivolous issue requested by a
defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Neither
*Anders* nor any other decision of this Court suggests, however,
that the indigent defendant has a constitutional right to compel
appointed counsel to press nonfrivolous points requested by the
client, if counsel, as a matter of professional judgment, decides
not to present those points."). There is no evidence before this
court to suggest that the performance of petitioner's appellate
counsel in this case was deficient under *Strickland*.

First, petitioner's claim that appellate counsel did not properly advise him concerning the number of issues that could be raised on appeal and that she refused to raise issues that petitioner instructed her to raise lacks merit. As the Supreme Court has stated, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52. Therefore, contrary to petitioner's claim, appellate counsel was not ineffective for failing to raise certain issues on appeal that he believes should have been raised.[6] Appellate counsel obviously made a tactical decision to pursue on appeal the arguments which in her professional judgment she deemed to have the greatest chance for success, and this court will not second-guess that decision.

As to trial counsel, the majority of petitioner's claims of ineffective assistance relate to his dissatisfaction with tactical decisions made by counsel.[7] As already stated, this court will

---

[6]Petitioner claims that appellate counsel failed to raise "insufficient evidence" to support the verdict for Count Two, failed to raise any sentencing issue and failed to raise the "Brady Law." As stated, appellate counsel was not required to raise any issues which in her professional judgment she deemed to be weak arguments.

[7]These claims by petitioner include trial counsel's alleged failure to: obtain preliminary hearing transcripts; formulate an adequate suppression hearing and trial strategy; obtain police disciplinary files; pursue a certain strategy regarding a severance motion; engage in certain strategy regarding the cross-examination of government witnesses at trial; present certain material at trial; make certain objections at trial; (continued...)

AO 72
(Rev. 8/82)

not second-guess such decisions, which trial counsel no doubt made after exercising his professional judgment about what strategies would produce the greatest likelihood for success in the pretrial stages of the case, at trial, and at sentencing. In any event, this court does not find that trial counsel was deficient concerning the tactical choices that he made in defending this case.

Next, several of petitioner's claims of ineffective assistance of trial counsel lack factual or legal support or otherwise are without merit. First, petitioner claims trial counsel did not send him missing pages of the indictment. This claim, even if true, does not amount to deficient performance by trial counsel. As the government points out in its response, petitioner was provided with a copy of the indictment at his arraignment. Furthermore, petitioner has not argued that he did not understand the charges against him that were set forth in the indictment.

Similarly, petitioner's claim that trial counsel failed to submit an adequate "interstate commerce motion" does not establish that counsel's performance was deficient. Petitioner's argument here is that there was a typographical error in the motion concerning his name. Such an error does not rise to the level of

---

request certain jury instructions; file a discovery motion; and file a motion for judgment of acquittal. However, petitioner has not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" in any of the areas about which he complains. See Strickland, 466 U.S. at 689.

ineffectiveness.

Likewise, petitioner's claims that trial counsel failed to raise Federal Rule of Evidence 403 and failed to object to admission of prior bad acts under Federal Rule of Evidence 404(b) lack factual and legal support. As to petitioner's Rule 403 argument, he claims that trial counsel should have filed a motion requesting the court to exclude the admission of drugs that were found with the firearm in Count One. As pointed out by the government in its response, no mention was made at trial of drugs being found with the firearm.

With regard to petitioner's Rule 404(b) argument, he alleges that trial counsel failed to object to a reference at trial that defendant previously had been convicted of a drug offense. One of the elements the government must prove to establish that petitioner was guilty of being a felon in possession of firearm in violation of 18 U.S.C. §922(g)(1) is that he previously had been convicted of a crime punishable by imprisonment in excess of one year. Therefore, proof that defendant previously had been convicted of a crime such as the prior drug offense about which he complains was outside of Rule 404(b).

Next, petitioner's claims that trial counsel was ineffective because he failed to investigate whether petitioner restored his civil rights under 18 U.S.C. §921(a)(20) and also because he failed to file a motion to dismiss the indictment alleging he was actually innocent lack merit. Petitioner argues that he should not have been convicted under 18 U.S.C. §922(g)(1) because his

civil rights had been restored before he was convicted in federal court, thus the indictment should have been dismissed because he was actually innocent.

Title 18 U.S.C. §921(a)(20) lifts a convict's firearms disability if the convict "has had civil rights restored" with respect to the conviction, unless the "restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." "Civil rights" as set forth in §921(a)(20) have been interpreted to encompass the rights to vote, hold public office and to sit on a jury. United States v. Leuschen, 395 F.3d 155, 159 (3d Cir. 2005).

Petitioner claims that documents he attached to his §2255 motion, which include a juror qualification questionnaire from the United States District Court for the Western District of Pennsylvania, an Allegheny County Voting History for Voter with his name on it showing that he voted in the 1989 and 1990 Primary elections, and an Allegheny County, Pennsylvania Certificate of Voter Registration dated March 3, 2007, establish that he retains the rights to vote, hold public office and sit on a jury. As explained below, petitioner is incorrect that his civil rights had been restored. Accordingly, trial counsel was not able to argue that he was actually innocent when he was indicted in this case on charges of being a felon in possession of a firearm.

With respect to the juror qualification questionnaire, petitioner was asked questions about his criminal record, specifically whether he had been convicted of any state or federal

crime punishable by imprisonment for more than one year, to which he responded "yes." The questionnaire requested additional information if the answer was "yes," including the date of the offense, date of the conviction, nature of the offense, the sentence imposed and the name of the court. The questionnaire also stated that one is disqualified from jury service only for criminal offenses punishable by imprisonment for more than one year. Petitioner did not properly respond to the request to provide additional information about his convictions, but rather simply wrote on the form that he received a federal grant to go to a technical school. Finally, the form does not indicate whether petitioner was ever allowed to sit on a jury. Therefore, this document does not establish that petitioner retained the right to sit on a jury, and his argument that his core civil rights had been restored fails.

Petitioner's next argument, that trial counsel was ineffective for failing to object to the absence of African-Americans in the jury pool, likewise lacks merit.

The Supreme Court has interpreted the Sixth Amendment's right to a trial by an impartial jury as encompassing the right to a jury drawn from a "fair cross section of the community." <u>See</u> <u>Taylor v. Louisiana</u>, 419 U.S. 522, 527 (1975). In <u>Duren v.</u> <u>Missouri</u>, 439 U.S. 357, 364 (1979), the Supreme Court set forth the criteria necessary to establish a *prima facie* violation of the fair cross-section requirement: (1) the group allegedly excluded is a distinctive group in the community; (2) the representation of

this group in venires from which juries are selected is not fair and reasonable in relation to the number of such people in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. "Systematic exclusion" has been defined to mean exclusion inherent in the particular jury selection process utilized. Id. at 366.

Here, petitioner has not, and cannot, establish a *prima facie* violation of the fair cross-section requirement. The jury venire in petitioner's case was chosen in accordance with the Plan of the United States District Court for the Western District of Pennsylvania for the Random Selection of Grand and Petit Jurors (the "Plan"). Petitioner makes no assertion that the Plan systematically excludes African-Americans, nor is there any evidence of systematic exclusion of African-Americans in venires from which juries are selected in this district.

Finally, petitioner argues that trial counsel was ineffective for failing to object to the sentencing enhancement he received under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e).[8] Petitioner argues that he does not have the requisite three previous convictions of a violent felony or a serious drug offense to qualify as an armed career criminal. In his amended motion,

---

[8]Section 924(e)(1) provides, "[i]n the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years. . . ." 18 U.S.C. §924(e)(1).

petitioner repeats this argument and further contends that his conviction for aggravated assault should not have been counted toward his classification as an armed career criminal because he entered a plea of nolo contendere, and that type of plea is not considered a guilty plea under the ACCA.

After reviewing petitioner's presentence report, this court concludes defendant was properly classified as an armed career criminal, thus he was subject to the enhanced sentence provided for under the ACCA. Defendant was convicted in the Allegheny County Court of Common Pleas of two prior "serious drug offenses" for possession with intent to deliver and delivery of crack cocaine.[9] Defendant also has two prior robbery convictions, which qualify as "violent felonies" under the ACCA. See United States v. Preston, 910 F.2d 81, 86 (3d Cir. 1990). Further, defendant has two prior aggravated assault convictions,[10] which also qualify

---

[9]A "serious drug offense" includes an offense under state law involving distributing or possessing with intent to distribute a controlled substance for which a maximum term of imprisonment of ten years or more is prescribed by law. 18 U.S.C. §924(e)(2)(a)(ii). Under Pennsylvania law, the penalty for conviction of possession with intent to distribute and distribution of crack cocaine is a maximum term of ten years imprisonment. 35 P.S. §§780-113(a)(30); 780-113(f)(1.1).

[10]Petitioner contends that his aggravated assault convictions should not have been counted toward armed career criminal status because he entered pleas of nolo contendere to those charges, and a nolo contendere plea is not a guilty plea for ACCA purposes. First, the presentence report indicates that petitioner entered a guilty plea, not a plea of nolo contendere, to the aggravated assault charges. Further, even if he had entered a nolo contendere plea to those charges, the aggravated assault convictions still would properly be counted as prior violent felony convictions for ACCA purposes. See, e.g., U.S.S.G. §4A1.2(a) (defining a prior sentence as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere").

AO 72
(Rev. 8/82)

as "violent felonies" under the ACCA.  See United States v. Cannon, 340 Fed. Appx. 826, 830 (3d Cir. 2009) (recognizing aggravated assault as a qualifying violent felony conviction under the ACCA).  As petitioner had been convicted of more than the requisite number of serious drug offenses and violent felonies, his sentence correctly was enhanced under the ACCA.  Consequently, trial counsel did not render ineffective assistance by failing to challenge application of the ACCA enhancement to petitioner's sentence because there would not have been any merit to such an argument.

To the extent the court has not discussed in detail every instance of alleged ineffectiveness claimed by petitioner, it is because such claims already have been shown to be without merit or because such claims are frivolous.

For all of the reasons discussed, the court finds that neither trial counsel's nor appellate counsel's performance was deficient.  Even if petitioner could demonstrate that either trial counsel's or appellate counsel's performance was deficient, which he cannot, petitioner has not established that the result of the prosecution would have been different.  Accordingly, petitioner's claim of ineffective assistance of counsel fails.

## Conclusion

For all of the foregoing reasons, petitioner's motion to vacate, set aside or correct sentence and his amended motion fail to raise any meritorious claim and must be denied as a matter of law.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit states that when a final order denying a motion under §2255 is entered, the district court must determine whether a certificate of appealability should issue. Congress has mandated that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). As the foregoing makes clear, petitioner's §2255 motion does not identify any basis which could support a substantial showing of the denial of a constitutional right, thus a certificate of appealability will not be issued in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996) (discussing standards governing certificates of appealability).

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: January 19, 2011

AO 72
(Rev. 8/82)

cc: Almon S. Burke
    Assistant U.S. Attorney

    Kamau A. Bailey